UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ISSAC L. SMITH,

    Plaintiff,

v.                                                          Case No. 6:17-cv-799-Orl-37TBS

JOHN DOE, et al.,

    Defendants.
_____

## **ORDER**

This matter is before the Court pursuant to 28 U.S.C. § 1915A(a) for purposes of determining whether the complaint should be dismissed because it fails to state a claim upon which relief can be granted. For the reasons set forth below, the complaint should be dismissed without prejudice.

        **I.**        **ALLEGATIONS IN COMPLAINT**

Plaintiff Isaac Smith ("Smith") commenced this civil rights action against two unidentified police officers employed by the Kissimmee Police Department. (Doc. 1 at 1, 3-4). Smith claims the officers violated his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. (Doc. 1 at 10). The factual allegations supporting these claims can be summarized as follows:

> On April 30, 2015, Smith was walking on Brack Street in Kissimmee, Florida when he saw a woman who owed him money. He approached and asked when she intended to pay. The woman screamed, took something out of her clothes and cut Smith, who began to bleed profusely. The woman panicked and ran away, but returned moments later, apologized and threw

-1-

money at Smith before again running away. (Doc. 1 at 5-6).

Smith screamed for help and a police car stopped. Smith asked the two officers for assistance with respect to his injury and tried to explain what happened. The officers placed Smith in the back seat of their police car, turned off the engine and rolled up the windows. The officers had already spoken with the woman, who falsely claimed that Smith robbed her. (Doc. 1 at 6).

The ambient temperature was in the high 80s and, as a result, the interior of the police car became increasingly hotter. Smith attempted to alert the officers to the situation by screaming loudly and hitting the window, but they were speaking with the woman who claimed to have been robbed. Smith became dizzy and eventually passed out. (Doc. 1 at 6-7).

Smith was awakened by paramedics who used ammonia packets to revive him. The paramedics told the officers, "Don't you know better than to leave a person for that long in a hot car with all the windows closed?" They also told the officers, "We have to take him to the hospital, look at all this blood." The officers responded, "He is faking, nothing is wrong with him." The paramedics replied, "This man passed out in this hot police car, he didn't fake that, and this is not fake blood, he's going to the hospital." Smith was in the police car for approximately 35-40 minutes. (Doc. 1 at 7-8).

After being awakened, Smith asked the officers to interview any witnesses to the underlying events who remained on Brack Street. The officers refused. Instead, they informed Smith that he was going to jail for robbery. Smith told the officers he planned to file a complaint against them. (Doc. 1 at 7-8).

Smith was taken to Osceola Regional Medical Center where he was bandaged and given fluids. Afterward, he was booked on robbery charges and released on bond. Smith was in jail for "a few hours." (Doc. 1 at 1, 7-9).

The State did not prosecute Smith in connection with this mater. (Doc. 1 at 10).

Smith contends he experienced physical distress, claustrophobia, and suffocation, as well as mental anguish, emotional distress and physical pain and suffering. Smith asks the Court to award him compensatory and punitive damages totaling $2.4 million. He

also asks for nominal damages, a declaratory judgment, and attorneys' fees and costs. (Doc. 1 at 9-11).

## II. LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure establishes the standard for pleading in the federal system. It provides that a complaint must contain a short and plain statement of claim showing that the plaintiff is entitled to relief. Rule 12(b)(6), in turn, allows the defendant to challenge the plaintiff's statement of claim and obtain dismissal when the plaintiff would be unable to prevail at trial even if he proved everything alleged in the complaint. To meet the requirements of Rule 8(a), and thus avoid dismissal under Rule 12(b)(6), a plaintiff must:

> allege more than labels and conclusions; his complaint must include factual allegations [adequate] to raise a right to relief above the speculative level. Stated differently, the factual allegations in a complaint must possess enough heft to set forth a plausible entitlement to relief. Moreover, while notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.

*Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir. 2007) (*per curiam*) (citations omitted). A prisoner's civil rights complaint must satisfy these requirements to survive the screening process imposed by 28 U.S.C. § 1915A(a). *See Jemison v. Wise*, 386 F. App'x 961, 963-964 (11th Cir. 2010) (*per curiam*).

## III. ANALYSIS

Smith alleges violations of his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. His various claims of

constitutional deprivation are addressed in turn.

### A. First Amendment

Smith alleges his First Amendment rights were violated because the officers arrested him after learning of his intent to file a complaint against them. In particular, Smith alleges the two officers "arrested me . . . to retaliate against me for exercising my [First] Amendment constitutional right to petition for redress of grievances." These allegations are insufficient to support a First Amendment claim because the complaint, when read as a whole, does "not permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In fact, Smith's complaint offers another (and perhaps more likely) explanation for his arrest – the statements made by the apparent victim who claimed she had been robbed. Smith will therefore need to provide additional factual detail to nudge this claim "across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[1]

---

[1]Although not relevant to this disposition, the Court notes an additional problem with this claim. Smith alleges a causal connection between his stated intent to file a claim and his subsequent arrest – specifically, that he told the officers of his intent and then they arrested him. However, the complaint suggests that Smith was already under arrest when he revealed his intent to pursue a claim. Smith alleges he was placed in the police car with the doors locked for thirty-five to forty minutes before he made the statement. To determine when a person has been arrested, courts focus on the point in time, "'in view of all of the circumstances surrounding the incident, [that] a reasonable person would have believed that he was not free to leave.'" *United States v. Hammock*, 860 F.2d 390, 393 (11th Cir. 1988) (*per curiam*) (*quoting United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). The circumstances which indicate an arrest include:

> the blocking of an individual's path or the impeding of his progress; the retention of a ticket or piece of identification; an officer's statement that the individual is the subject of an investigation, or that a truly innocent person would cooperate with the law enforcement officer; the display of weapons; the number of officers present and their demeanor; the length of the detention; and the extent to which the officers physically restrained the individual.

*Id*. If Smith were already under arrest at the time he told the officers of his intent to assert a claim, then there cannot be a causal connection between the two events and, hence, no unlawful retaliation.

B.  *Fourth Amendment*

Smith alleges his Fourth Amendment rights were violated because the officers arrested him falsely and used excessive force.

**(1)  False Arrest**

Smith alleges he was falsely arrested because the police officers unjustifiably believed the apparent victim's story about what happened. Smith alleges the officers should have spoken to witnesses who remained at the scene and who would have confirmed his version of events. (Doc. 1 at 8). It is well-settled that a warrantless arrest without probable cause provides a basis for a § 1983 claim. *Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009). The requisite probable cause exits when "law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992). Smith tacitly concedes probable cause when he alleges the apparent victim told the officers he robbed her. (Doc. 1 at 6). Smith's allegations establish that the officers possessed a factual foundation from which to believe – reasonably – that he committed a crime.

Even assuming the absence of probable cause to arrest, the officers would be entitled to qualified immunity as a matter of law. It is hornbook law that an officer receives immunity with respect to a claim of false arrest so long as he possesses "arguable" probable cause. *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010). Such cause exists when "'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants *could have believed that probable cause*

*existed to arrest Plaintiff.'" Id.* (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004)) (emphasis added); *see also Migut v. Flynn*, 131 F. App'x 262, 264 (11th Cir. 2005) (*per curiam*) (law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity). As noted above, Smith alleges the apparent victim told the officers he robbed her. A reasonable police officer, in the same circumstance, *could have believed* that probable cause existed. Smith's allegations establish that the officers are entitled to qualified immunity as a matter of law.

**(2)     Excessive Force**

Smith alleges he was subjected to excessive force because the police officers placed him in a police car for thirty-five to forty minutes on a hot day, with the engine turned off, and the windows rolled up. (Doc. 1 at 6, 8). Leaving a person "in an unventilated police car in extreme temperatures for a long period of time can give rise to a Fourth Amendment violation" but leaving a person in such a car for a relatively short period of time cannot. *Borsella v. Parker*, No. 6:11-cv-1249-Orl-28GJK, 2013 WL 375480, at *4 (M.D. Fla. Jan. 31, 2013).[2] Smith alleges he sat in an unventilated police car for approximately

---

[2]The cases in which a court found a triable issue of fact regarding an excessive force claim are as follows: *Kassab v. San Diego Police Dep't*, 453 F. App'x 747, 748 (9th Cir. 2011) (triable issue of excessive force because plaintiff was detained in police car for more than four hours with the windows rolled up, no air conditioning, and an interior temperature of 115 degrees); *Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002) (triable issue of excessive force because plaintiff was detained in police car with windows rolled up in ninety-degree heat for three hours); *Six v. Beegle*, No. 2:11-cv-698, 2013 WL 5707245, at *17 (S.D. Ohio 2013) (triable issue of excessive force because plaintiff was detained for nearly three hours in police car with windows rolled up and air conditioning turned off).

The cases in which a court did not find a triable issue of fact are as follows: *Arias v. Amador*, 61 F. Supp. 3d 960, 976 (E.D. Cal. 2014) (summary judgment in favor of defendants; "[e]ven assuming the truth of Martinez's assertion that it was 'very hot' in the car, it is undisputed that he was in the car for less than fifteen minutes. It cannot be said that such a short period of exposure is an 'objectively unreasonable' example of excessive force."); *Borsella*, 2013 WL 375480, at *4 (summary judgment in favor of defendants; "Plaintiffs have not cited to any case law to establish that Borsella's confinement of only thirty-five minutes

thirty-five to forty minutes. Such a relatively short period of time is insufficient to establish excessive force as a matter of law.

Even assuming a violation, the officers would be entitled to qualified immunity as a matter of law. It is hornbook law that a law enforcement officer "receives qualified immunity for use of force during an arrest if an objectively reasonable officer in the same situation could have believed the use of force was not excessive." *Brown*, 608 F.3d at 738. The officers' decision to place Smith in an unventilated police car for thirty-five to forty minutes on a hot day was not so objectionable "that every reasonable officer in [their] position would have concluded that the force was unlawful." *Howell v. City of Lithonia*, 397 F. App'x 618, 620-21 (11th Cir. 2010) (*per curiam*); *see also Lyle v. Dodd*, 857 F. Supp. 958, 967 (N.D. Ga. 1994) (defendant entitled to qualified immunity on claim based on placement in hot patrol car; "reasonable officer likely would not know if he could safely leave plaintiffs in his patrol car with the engine running or if he could safely leave the windows down, giving them access to the car's front compartment. Although they were

---

violated the Constitution."); *Emmerick v. City of Gatlinburg, Tenn.*, No. 3:08-cv-305, 2010 WL 3861047, at *3-4 (E.D. Tenn. Sept. 24, 2010) (summary judgment in favor of defendants on ground of qualified immunity; "the Court finds that the defendants did not violate a clearly established constitutional right when they left plaintiff in an unventilated police car for 30 minutes" with the windows rolled up and no air conditioning); *Kennedy v. City of New York*, No. 07 CIV. 10622(NRB), 2010 WL 1779235, at *7 (summary judgment for defendants; plaintiff was held for approximately twenty-two minutes in police car in which interior temperature felt well over 100 degrees); *Kanvick v. City of Reno*, No. 3:06-CV-00058-RAM, 2008 WL 873085, at *11 (D. Nev. 2008) (summary judgment in favor of defendants; no violation where plaintiff was left in hot police van for seventeen minutes); *Wintermantel-Baptista v. Hanohano*, No. 05-00485 JMS/LEK, 2007 WL 1201655, at *9 (D. Haw. Apr. 23, 2007) (summary judgment for defendants; no violation where plaintiff was detained in squad car in the hot sun with the windows rolled up for five to ten minutes); *Esmont v. City of New York*, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005) (summary judgment in favor of defendants; no excessive force where plaintiff was left in squad car for ten minutes).

uncomfortable from the experience, plaintiffs have not pointed to any lingering injuries from the confinement.").

### C. *Fifth Amendment*

Smith alleges his Fifth Amendment rights were violated. (Doc. 1 at 5, 10). The Fifth Amendment does not apply to Smith's situation, however, because the police officers involved in his arrest are state actors and not federal officials. *See Riley v. Camp*, 130 F.3d 958, 972 n.19 (11th Cir. 1997) (*per curiam*) ("The Fifth Amendment obviously does not apply here – the acts complained of were committed by state rather than federal officials.").

### D. *Eighth Amendment*

Smith alleges his Eighth Amendment rights were violated. (Doc. 1 at 10). The Eighth Amendment does not apply to Smith's situation, however, because the alleged misconduct occurred prior to conviction. *See Whitley v. Albers*, 475 U.S. 312, 318 (1986) ("The Cruel and Unusual Punishments Clause 'was designed to protect those convicted of crimes,' and consequently, the Clause applies 'only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.'") (citation omitted).

### E. *Fourteenth Amendment*

Smith alleges his Fourteenth Amendment rights were violated because the officers "acted with 'deliberate indifference' to my serious life-sustaining needs and to my serious medical needs, by leaving me for over 35-40 minutes in their SUV." (Doc. 1 at 8-9). To prevail on such a claim, a litigant must allege an objectively serious medical need,

deliberate indifference to that need, and a causal connection between that indifference and an injury. *Mann v. Taser Int'l Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). "Deliberate indifference" in this context requires subjective knowledge that a person is at risk of serious harm and disregard of that risk by conduct "that is more than mere negligence." *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003). "Inadvertent or negligent failure to provide medical care does not rise to a constitutional violation." *Crenshaw v. Lister*, 509 F. Supp. 2d. 1230, 1236 (M.D. Fla. 2007) (granting motion to dismiss because complaint lacked factual allegations that plaintiff's untreated medical needs were serious or that defendant had subjective knowledge of such serious medical needs or acted with more than negligence).

Smith's allegations do not show deliberate indifference as a matter of law. Smith alleges he was cut by the apparent victim; he was thereafter placed in a police car for thirty-five to forty minutes where he bled "profusely;" he was then treated at the scene by paramedics; and he was ultimately taken to a hospital where he was "cleaned/bandaged, and given fluids to rehydrate me." (Doc. 1 at 6-8). Smith's allegations – even when read in the light most favorable to him – imply the officers' conduct was negligent at most. The complaint does not contain the sorts of allegations that might allow an inference of greater culpability in responding to Smith's needs – such as the length or depth of the cut; the amount of blood visible on his clothing and/or skin at the time the officers confronted him; his efforts to show the wound to the officers or verbalize the magnitude of his injury. Smith will need additional factual detail to nudge

this claim "across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570.

Accordingly, it is **ORDERED AND ADJUDGED** that

1. The case is **DISMISSED WITHOUT PREJUDICE.**

2. Plaintiff is hereby given **thirty (30) days** from the date of this order to file an amended complaint for purposes of correcting the pleading deficiencies identified herein and, in particular, providing additional factual support for the retaliation and medical treatment claims. The failure to file an amended complaint within the stated timeframe will result in the termination of this case and entry of judgment without further notice.

**DONE and ORDERED** in Orlando, Florida on June 7th, 2017.



ROY B. DALTON JR.
United States District Judge

Copies to:
OrlP-5 6/7
Isaac Smith